## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## ABERDEEN DIVISION

JOHN HARLEY TALLANT                                          PETITIONER

v.                                                    No. 1:22CV192-MPM-JMV

BRANDON SMITH                                              RESPONDENT

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of John Harley Tallant for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has moved to dismiss the petition as untimely filed under 28 U.S.C. § 2244(d)(2) and as procedurally defaulted. Tallant has responded to the motion, and the matter is ripe for resolution. For the reasons set forth below, the State's motion to dismiss will be granted and the instant petition for a writ of *habeas corpus* dismissed with prejudice as untimely filed.[1]

### Facts and Procedural Posture[2]

The procedural posture of this case is lengthy. John Harley Tallant is in the custody of the Mississippi Department of Corrections ("MDOC") and is currently housed at the Carroll County Correctional Facility in Vaiden, Mississippi. He is serving a term of twenty-four years and eleven months, day-for-day, followed by five years of post-release supervision, for his 2017 guilty plea conviction for three counts of transmission of child pornography in the Lee County

---

[1]Several of the plaintiff's claims could also be dismissed under the doctrine of procedural default. However, as it is clear that the instant petition should be dismissed, in its entirety, as untimely filed, the court will forego the procedural default analysis.

[2] The court has taken the facts and procedural posture of this case from the State's motion to dismiss, as they are both accurate and undisputed.

Circuit Court. Exhibit F. [3]

**Arrest, Indictment, and Arraignment**

The Mississippi Court of Appeals accurately summarized the facts of Tallant's charges of

child pornography and sexual abuse against his daughter beginning when she was just a baby:

> ¶ 2. On January 25, 2017, Corporal Donna Franks of the Lee County Sheriff's Department signed an affidavit stating that Tallant had committed sexual battery against a minor child. That same day, the Lee County Justice Court issued a warrant for Tallant's arrest. He was arrested on February 28, 2017, in Tupelo, Mississippi, and transported to the Lee County jail. Investigator Len Schaefer of the Lee County Sheriff's Department read Tallant his Miranda rights and further provided him with a written statement of those rights and a waiver that Tallant could sign. Initially, Tallant refused to speak to Schaefer without counsel present. Later, Tallant waived his Miranda rights and made a voluntary confession. In his confession, Tallant stated that he sent his wife ten to twenty images in multiple texts of children engaging in sexual acts and that he knew this was child pornography. Tallant further admitted to engaging in inappropriate sexual acts with his daughter. Tallant posted a bond in the sum of $350,000 and was released from jail.

*Tallant v. State*, 345 So. 3d 575, 579–80 (Miss. Ct. App. 2021), *reh'g denied* (May 17, 2022),

*cert. denied*, 344 So. 3d 278 (Miss. 2022); *see also* State Court Record (SCR), Cause No. 2020-

CP-01077-COA, Vol. 1 at 75–79; Vol. 3 at 1–104.

A Lee County grand jury initially indicted Tallant under a seven-count indictment on

three counts (Counts I–III) of sending or transmitting child pornography, two counts (Counts IV–

V) of sexual battery of a child under the age of fourteen, and two counts (Counts VI–VII) of

fondling a child under the age of sixteen. SCR, Cause No. 2020-CP-01077-COA, Vol. 1 at 3–5.

The Mississippi Court of Appeals recounted Tallant's later proceedings leading up to his

guilty pleas:

> ¶4. Tallant was arraigned on July 5, 2017. On the day of the arraignment, the State filed a motion to continue to hold Tallant without bond pending trial. At the arraignment, the circuit court revoked Tallant's bond, appointed him an attorney, and set the hearing on the State's motion for July 6, 2017. At that hearing, Franks

---

[3] The exhibits referenced in this memorandum opinion may be found attached to the State's motion to dismiss the instant petition for a writ of *habeas corpus*.

and Schaefer testified about the investigation. Franks presented several text-message logs from Tallant, which included both multiple messages and multiple pictures of child pornography:

> State: Investigator Franks, as part of your investigation did you or someone on behalf of the sheriff's department obtain text messages between the defendant and his wife, Lyn Tallant?
>
> Franks: Yes, sir.
>
> State: And those text message logs include contents of text messages and pictures?
>
> Franks: Yes, sir.

In addition, Franks presented various text messages between Tallant and his wife in which Tallant admitted to engaging in inappropriate sexual acts with his daughter. The State also presented a written voluntary statement from Tallant's wife. The court overruled the defense's spousal-privilege objection. In her statement, Tallant's wife alleged that she did not know about Tallant's interests in children until he told her that "he wanted to kidnap some kids (girls) to lay and play with and rape them." When she had their daughter, she caught Tallant inappropriately touching their child, starting when the child was age one. According to Tallant's wife, their daughter "began to complain [about] her bottom hurting," but Tallant would not allow her to take the child to the doctor's office. Although she was afraid of Tallant, she finally took their daughter to the doctor to protect her. Based on witness testimony and evidence, the court granted the State's motion to hold Tallant without bond.

*Tallant*, 345 So. 3d at 580; *see also* SCR, Cause No. 2020-CP-01077-COA, Vol. 3 at 1–104.

**Guilty Pleas and Sentence.**

On August 18, 2017, Tallant pled guilty to the three counts of transmitting child pornography (Counts I–III). Exhibit A; *see also* SCR, Cause No. 2020-CP-01077-COA, Vol. 1 at 67–73, 75–79. The trial court determined that Tallant entered his pleas knowingly, freely, and voluntarily and accepted his guilty pleas to three counts of transmitting child pornography. *Id*. On that same date, the trial court filed three separate Orders sentencing Tallant on his pleas. *Id*.

On Count I, the trial court specifically informed Tallant that he was required to serve his sentence day-for-day. *Id.*

The trial court accepted the State's recommendation on Count I and sentenced Tallant to a term of forty years in the custody of the MDOC, with fifteen years and one month suspended and twenty-four years and eleven months to serve day-for-day. *Id.* The trial court also sentenced Tallant to five years of post-release supervision and ordered that he register as a sex offender upon his release from physical MDOC custody. *Id.* On Counts II and III, the trial court also sentenced Tallant to serve two forty-year terms in MDOC custody; but the trial court suspended those two forty-year terms on the "same terms and conditions" as Count I. *Id.* In exchange for Tallant's pleas, the trial court retired Counts IV–VII to the files. Exhibit B; *see also* SCR, Cause No. 2020-CP-01077-COA, Vol. 1 at 71.

**State Post-Conviction Filings[4]**

Thirteen months later, on September 17, 2018, Tallant, through counsel, filed his first state court post-conviction pleading entitled "Motion for Post Conviction Relief" ("first PCR motion") in the Lee County Circuit Court. SCR, Cause No. 2020-CP-01077-COA, Vol. 1 at 80–82. Tallant alleged that the trial court previously "ordered a copy of the evidence be redacted and released to [Tallant's counsel], but it was never released." *Id.* at 80. Tallant thus requested "that a copy of the evidence be redacted and released to his attorney; or in the alternative, judg[]ment in [Tallant's] case be set aside." *Id.* The State responded, explaining that the trial court ordered no transmission or distribution of the discovery in Tallant's case; instead, the court

---

[4] Tallant referred to these filings as motions for post-conviction relief. In the interest of clarity, the court will do the same. However, as noted above and discussed more fully below, some of the filings were not actually requests for post-conviction collateral relief.

ordered that it be placed under seal at the district attorney's office because it contained child pornography. SCR, Cause No. 2020-CP-01077-COA, Vol. 2 at 83–84.

The trial court denied Tallant's first PCR motion on November 30, 2018. *Id*. at 85–87. The trial court explained:

> Prior to entering his pleas of guilty, the Petitioner filed a Motion to Compel State to Provide Access to Hard Drive. In said motion, the Petitioner sought access to his computer's hard drive which was seized by the State of Mississippi during its investigation. The Court ordered the State of Mississippi to make the evidence available for viewing by the Petitioner and his counsel at the District Attorney's office. However, in accordance with MRCrP 17.7, the Court prohibited the State from transmitting or distributing copies of this material to the defense due to the nature of the evidence. The Petitioner does not dispute that the evidence was made available for his review.

Exhibit C; SCR, Cause No. 2020-CP-01077-COA, Vol. 2 at 86. The trial court set forth four reasons for its denial of Tallant's PCR motion: (1) He failed to specifically assert any statutory grounds for relief under the Mississippi Uniform Post-Conviction Collateral Relief Act; (2) He failed to cite any authority in support of his motion; (3) His motion failed to comply with the format requirements of Mississippi Code Annotated section 99-39-9; and (4) He failed to allege that his guilty pleas were involuntary. Exhibit C; SCR, Cause No. 2020-CP-01077-COA, Vol. 2 at 86.

On March 1, 2019, Tallant filed an undated letter in the Lee County Circuit Court requesting a copy of "any and all court documents relating to [his] arrest and conviction … [i]n particular, [his] bond revocation hearing … [his] pre-trial motions hearing …, and [his] plea hearing." *Id*. at 88. He also requested a copy of "any and all court documents pertaining to the judge's decision" on his first PCR motion filed in September 2018. *Id*. (explaining that "[he was] in the process of [his] *habeas corpus*"). Just over two weeks later, Tallant filed a second undated letter in the Lee County Circuit Court – again "requesting any and all records" in his

criminal case, *except for* his indictment, sentencing order, and plea hearing transcript that he already received from the Clerk's Office. *Id*. at 89–90. Tallant thus clarified that he sought the transcripts of his bond and pre-trial motion to suppress hearings and "every arrest report, affidavit, signed plea agreement, any and all witness statements and/or testimony, and a full 'Docket Sheet.'" *Id*. at 89.

He also "ask[ed] for everything, from cover to cover and all components in between; including all evidence, exhibits, and/or copies thereof." *Id*. Finally, he "request[ed] any and all records regarding [his post-conviction case] (if any)." *Id*. at 90. On April 12, 2019, Tallant filed another undated letter "asking once again for 'everything' in [his] last request" and for an itemized cost of his records. *Id*. at 91. On May 31, 2019, Tallant filed another letter (with a signature date of May 6, 2019), asking for an itemized cost of his records. *Id*. at 95.

On November 20, 2019, Tallant filed a petition for writ of mandamus with the Mississippi Supreme Court (with a signature date of November 18, 2019) on his first PCR motion filed through counsel in the Lee County Circuit Court. *See* SCR, Cause No. 2019-M-01730, Case Folder. On December 3, 2019, the trial court responded, explaining that it previously entered an Order on November 30, 2018, denying Tallant's first PCR motion. *Id*. The trial court attached a copy of the Order to its response and explained that "[t]he [c]ourt ha[d] instructed the Circuit Clerk of Lee County to prepare an estimate of costs for the Petitioner to obtain a copy of the complete criminal file in Lee County Cause No. CR17-388." *Id*. The Mississippi Supreme Court dismissed Tallant's mandamus petition as moot on February 10, 2020. Exhibit D; *see also* SCR, Cause No. 2019-M-01730, Case Folder.

On August 24, 2020, Tallant and filed his second PCR motion (a *pro se* pleading signed August 17, 2020) with the trial court. SCR, Cause No. 2020-CP-01077-COA, Vol. 2 at 96–147.

On September 2, 2020, the trial court entered an Order denying Tallant's second PCR motion. Exhibit E; *see also* SCR, Cause No. 2020-CP-01077-COA, Vol. 2 at 148–51.

      **Appeal of Denial of Second PCR Motion**.

      Tallant appealed, listing five grounds for relief in his *pro se* brief. SCR, Cause No. 2020-CP-01077-COA, Appellant's Brief. Some of the issues overlapped, and a close review reveals that he argued only three distinct issues on appeal: (1) His second PCR motion filed in August 2020 was not successive and thus not procedurally barred; (2) The trial court erred in dismissing his ineffective-assistance-of-counsel claim; and (3) His indictment contained multiplicitous, identical counts, failed to include the essential elements of the crime, and violated his Fifth Amendment right to be free from double jeopardy. *Id*.

      The Mississippi Court of Appeals held that Tallant's first PCR motion filed through counsel in September 2018, was not "properly filed" under state law. *Tallant*, 345 So. 3d at 592; *see also* Exhibit F. The state appellate court thus concluded that Tallant's second PCR motion filed in August 2020 was *not* a successive PCR motion. *Id.* However, the appellate court affirmed the trial court's denial of Tallant's second PCR motion filed in August 2020 "because Tallant failed to prove his claims of ineffective assistance of counsel and double jeopardy." *Id.* As noted above, the Mississippi Court of Appeals denied rehearing on May 17, 2022. *See* SCR, Cause No. 2020-CP-01077-COA, Case Folder. The Mississippi Supreme Court denied certiorari review on August 18, 2022. Exhibit G; *see also* SCR, Cause No. 2020-CT-01077-SCT, Certiorari Folder.

      **Federal Petition for Writ of *Habeas Corpus***

      On December 12, 2022, Tallant filed his *pro se* petition for writ of *habeas corpus* under 28 U.S.C. § 2254 (signed December 6, 2022), challenging his guilty pleas and resulting

sentences in the Lee County Circuit Court. Doc. 1. As discussed in detail below, Tallant argues

that "[he] feel[s] [he is] entitled to equitable tolling" for various reasons. *See* Doc. 1 at 13–14.

Finally, Tallant requests that this Court "vacate two of [his] three convictions and remand for

resentencing, or grant an evidentiary hearing to further develop the lacking current record." *Id*.

at 15. On January 6, 2023, Tallant filed a pleading entitled "Proposed Supplement/Amends to

Ground 1." Doc. 7.

### One-Year Limitations Period

The instant petition for a writ of *habeas corpus* will be dismissed with prejudice as untimely

filed. Decision in this case is governed by 28 U.S.C. § 2244(d), which provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court. The limitation
> period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of
>> direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by
>> State action in violation of the Constitution or the laws of the United
>> States is removed, if the applicant was prevented from filing by such State
>> action;
>>
>> (C) the date on which the constitutional right asserted was initially
>> recognized by the Supreme Court, if the right has been newly recognized
>> by the Supreme Court and made retroactively applicable to cases on
>> collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims
>> presented could have been discovered through the exercise of due
>> diligence.
>
> (2) The time during which a properly filed application for State postconviction or
> other collateral review with respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation under this subsection.

28 U. S.C. § 2244(d)(1) and (2).

### Tallant's Convictions Became Final on November 16, 2017

Under 28 § 2244(d)(1)(A), Tallant's convictions and sentences became final on November 16, 2017. On August 28, 2017, the trial court filed three separate orders sentencing Tallant on his guilty pleas to transmitting child pornography. Exhibit A; *see also* SCR, Cause No. 2021-CP-01077-COA, Vol. 1 at 67–73, 75–79. Under state law, there is no direct appeal from a guilty plea. Miss. Code Ann. § 99-35-101. However, a Mississippi petitioner's guilty plea becomes final ninety days after sentencing on his plea—when the time for seeking direct review of the guilty plea in the United States Supreme Court would expire. *Wallace v. Mississippi*, 43 F.4th 482, 497–501 (5th Cir. 2022). Hence, under *Wallace*, Tallant's three sentences for transmission of child pornography became final on November 16, 2017 (August 18, 2017 + 90 days). *Id*.

**Tallant's Federal *Habeas Corpus* Deadline**

Tallant thus had until November 16, 2018, one year from the date his conviction became final, to file a federal petition for a writ of *habeas corpus* in this court (November 16, 2017 + 1 year = November 16, 2018). 28 U.S.C. § 2244(d). As discussed below, he does not meet the requirements for statutory or equitable tolling; as such, the instant federal petition – filed in 2022 – is untimely and will be dismissed with prejudice for that reason. 28 U.S.C. § 2244(d).

**Statutory Tolling Does Not Apply**

Tallant is not entitled to statutory tolling of his one-year federal *habeas corpus* limitations period under 28 U.S.C. § 2244(d)(2) because he did not submit a "properly filed" application for post-conviction relief as contemplated by 28 U.S.C. § 2244(d)(2), before the one-year deadline of November 16, 2018. *See Grillete v. Warden,* 372 F.3d 765, 769 (5th Cir. 2004); *Flanagan*, 154 F.3d at 201; *Davis v. Johnson*, 158 F.3d 806 (5th Cir. 1998). None of his motions or letters seeking copies of his state court records can be viewed as valid state applications for

- 9 -

post-conviction collateral relief; as such, none satisfied 28 U.S.C. § 2244(d)(2). Further, a mandamus action does not statutorily toll the federal *habeas corpus* limitations period, as explained below.

Tallant's state court records, as available from the Mississippi Supreme Court, confirm that he waited thirteen months to file his first state post-conviction pleading through counsel in the Lee County Circuit Court on September 17, 2018. SCR, Cause No. 2021-CP-01077-COA, Vol. 1 at 80–82. However, that first PCR motion simply requested "that a copy of the evidence be redacted and released to his attorney; or in the alternative, judg[]ment in [Tallant's] case be set aside." SCR, Cause No. 2021-CP-01077-COA, Vol. 1 at 80. Though he styled the document as an application for post-conviction collateral relief, he sought only copies – not relief for his judgment or sentence. [5] The trial court thus denied the application for failure to satisfy the statutory requirements under the state post-conviction collateral relief act. Exhibit C; *see also* SCR, Cause No. 2021-CP-01077-COA, Vol. 2 at 86. Hence, Tallant's first PCR motion did not toll the federal *habeas corpus* limitations period. *See Larry v. Dretke*, 361 F.3d 890, 895 (5th Cir. 2004) (quoting *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (holding that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings")); *accord North v. Davis*, 800 F. App'x 211, 213 (5th Cir. 2020) (quoting *Artuz*, 531 U.S. at 8).

Over five months later, Tallant submitted the first in a series of *pro se* letter requests for documents in his criminal matter. *See* SCR, Cause No. 2021-CP-01077-COA, Vol. 2 at 88–95.

---

[5] Though Tallant asked, in the alternative, for the criminal judgment to be set aside, he provided no authority for obtaining such relief based upon the failure to produce documents. Indeed, the motion contained no authority at all – conformed with virtually none of the requirements of Mississippi Uniform Post-Conviction Collateral Relief Act, found in Miss. Code Ann. § 99-39-9. It was an application for post-conviction collateral relief in name only.

However, these records requests did not toll the statute of limitations—as requests for records likewise do not consist of "properly filed application[s] for State post-conviction or other collateral review with respect to the pertinent judgment or claim[.]" 28 U.S.C. § 2244(d)(2).

In November 2019, Tallant filed a petition for writ of mandamus action regarding his first PCR motion in the Mississippi Supreme Court. *See* SCR, Cause No. 2019-M-01730, Case Folder. Mandamus proceedings do not, however, entitle a petitioner to statutory tolling under 28 U.S.C. § 2244(d)(2). *See Moore v. Cain*, 298 F.3d 361, 367 (5th Cir. 2002).

Finally, in August 2020, almost two years after his federal *habeas corpus* limitations period expired, Tallant, proceeding *pro se*, filed his second PCR motion in the trial court. *See* SCR, Cause No. 2021-CP-01077-COA, Vol. 2 at 96–147. As his second PCR motion was filed long after the federal *habeas corpus* limitations period expired, the motion did not operate to toll the federal limitation period under 28 U.S.C. § 2244(d)(2). *See Torres v. Lumpkin*, No. 20-40819, 2021 WL 6101505, at *1 (5th Cir. Oct. 6, 2021); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (a "state *habeas* application did not toll the limitation period under section 2244(d)(2) because it was not filed until *after* the period of limitation had expired"); *accord Fairley v. Kent*, No. 18–31193, 2019 WL 12374114, at *1 (5th Cir. July 3, 2019), *cert. denied*, 140 S. Ct. 882 (2020); *see also Roberts v. Wilkinson Cty. Corr. Facility*, No. 1:18CV188-SA-JMV, 2019 WL 1210100, at *4 (N.D. Miss. Mar. 14, 2019) (same).

Tallant's federal petition thus remained due in this court on or before November 16, 2018. As discussed below, Tallant cannot meet the requirements for equitable tolling; hence, his federal petition is untimely and will be dismissed with prejudice for that reason.

**Equitable Tolling Does Not Apply**

- 11 -

Tallant argues that he meets the requirement to invoke equitable tolling, which renders his petition timely. "The doctrine of equitable tolling preserves a [petitioner's] claims when strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir.2000) (per curiam) (internal quotations omitted). The one-year limitations period of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 28 U.S.C. § 2255(f) is not jurisdictional; thus, it is subject to equitable tolling. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002). For this reason, a district court may toll the AEDPA limitations period when certain condition are met. *Id.* at 229–30.

The decision whether to apply equitable tolling turns on the facts and circumstances of each case. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.2000); *see also Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir.2002) (per curiam). However, a court may apply equitable tolling only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998); *see also Minter v. Beck,* 230 F.3d 663, 666–67 (4th Cir.2000) ("[E]quitable tolling of the AEDPA's one year limitation period is reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.") (quotation omitted).

The petitioner bears the burden of establishing that equitable tolling is warranted. *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), modified on reh'g, 223 F.3d 797 (2000) (per curiam). In order to satisfy his burden, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing his § 2255 motion. *Lawrence v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007). Under the diligence prong, Tallant must show "reasonable diligence, not maximum feasible diligence." *Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019) (quoting *Holland v. Fla.*,

560 U.S. 631, 653, 130 S. Ct. 2549, 2565, 177 L. Ed. 2d 130 (2010)).  A petitioner's delay of even four months shows that he has not diligently pursued his rights.  *Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001)

    In this case, Tallant has met neither prong of the equitable tolling test.  He has shown neither that he was actively misled nor prevented in some extraordinary way from asserting his rights.  He was not prevented from seeking federal *habeas corpus* relief in a timely manner.  *See* Doc. 1; *see also Ott v. Johnson*, 192 F.3d 510, 513–14 (5th Cir. 1999).  As such, he is not entitled to equitable tolling of the federal limitations period.

    Tallant offers a host of reasons why he believes equitable tolling applies, none of which as merit – and some of which are contradicted in the record.  Tallant argues in his federal petition that "[he] feel[s] [he is] entitled to equitable tolling because [he] substantially relied on his trial lawyer during the initial 1-year period."  Doc. 1 at 13.  He also alleges:

> The entire time from Aug[ust] 18, 2017 to Sept[ember] 17, 2018 [he and his father] were told numerous times that he ([Tallant's] lawyer Kerry Bryson) was working on getting something filed, that the 1 year time limit didn't apply so long as he filed something in the courts and it would 're-set' the timeline.

Doc. 1 at 13.  Tallant then alleges that "once trial counsel filed the false motion, he continued to lie and said no ruling was taken and [the] judge never set a hearing, which le[]d [Tallant] to start [his] own inquiry."  Doc. 1 at 13.  Tallant contends that he did not learn that trial counsel had "misled" him through "fraudulent" actions until he filed his mandamus petition in the Mississippi Supreme Court.  Doc. 1 at 13. According to Tallant,

> [I]n Dec[ember] of 2019, [he] started researching how to file a correct PCR with all issues needed to present [at] the state level, as [he] found out, that was the 1st step to federal *habeas corpus*.

Doc. 1 at 13.

Tallant's submissions to this court in the present case refute these allegations. *See* Doc. 1-1 at 2–3. He attached to his petition copies of two letters from his trial counsel – both of which informed him of the status of his first PCR motion (filed by counsel) in the Lee County Circuit Court. *See* Doc. 1-1 at 2–3. In the first letter, dated October 2, 2018, trial counsel's paralegal informed Tallant "that the [j]udge ordered [counsel] to file [the enclosed copy of the first PCR motion requesting production of evidence in Tallant's case] as a formality, before [the court] could act on it and that a court date can be set in the near future to hear it." Doc. 1-1 at 2.

In the second letter, dated December 27, 2018, trial counsel informed Tallant of the trial court's ruling on his first PCR motion. Doc. 1-1 at 3. In that letter (which Tallant, himself, submitted to the court), trial counsel informed him:

> I filed a motion for post-conviction relief as a means to force the DA to turn over a redacted copy of the evidence from your case. The judge refused to have the issue placed on the docket, but he did rule that nothing in the rules of criminal procedure allows for production of evidence post-conviction.

Doc. 1-1 at 3 (emphasis added); *see also* SCR, Cause No. 2019-M-01730, Case Folder (where Tallant also submitted these same letters with his mandamus petition filed in the Mississippi Supreme Court in November 2019); SCR, Cause No. 2020-CP-01077-COA, Appellant's Brief (likewise admitting that trial counsel sent notification to him in December 2018). Hence, Tallant's own records refute his allegations that trial counsel deceived and misled him regarding the status of his state post-conviction proceedings. *See* Doc. 1-1 at 2–3.

Tallant also states that "[he] feel[s] [he is] entitled to" invoke equitable tolling because trial counsel was unresponsive to his requests for information to support his application for post-conviction relief. Doc. 1 at 14. Tallant alleges that "[b]etween Dec[ember] and Aug[ust] 2020, [his] father made many attempts to get [his] information from [trial counsel] with no success." Doc. 1 at 14. Tallant alleges that throughout that entire period, he attempted to "get evidence in

- 14 -

support of his *pro se* PCR motion, and [his] dad continued to seek new counsel to help, with no

success as nobody wanted to take [his] case." Doc. 1 at 14. Tallant stated:

> *After* [trial counsel] effectively abandoned [him] the last time [his] dad was able
> to see [trial counsel] in person, it culminated in [trial counsel] getting mad at [his]
> dad and saying he wasn't going to help anyone where it could hurt [counsel's]
> career and [Tallant] wasn't getting anything from him without a court order… .
> [But] as [Tallant's] father untimely passed of COVID in Dec. of 2020, he is
> unable to swear an affidavit to these facts. But they are true.

Doc. 1 at 14 (emphasis added). Tallant then alleges that, "[i]f he had not been lied to and

intentionally deceived during that 1st year, [he] would not have lost so much valuable time and

all filings would have been prompt." Doc. 1 at 14.

"[N]either a petitioner's unfamiliarity with the legal process nor his lack of representation

during the applicable filing period merits equitable tolling." *Turner v. Johnson*, 177 F.3d 390,

392 (5th Cir. 1999). Neither "attorney error [n]or neglect is … an extraordinary circumstance

such that equitable tolling is justified." *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002).

For these reasons, Tallant's allegations against trial counsel do not present "rare and exceptional"

circumstances sufficient to invoke equitable tolling of the limitations period. *See Turner*, 177

F.3d at 392; *Cousin*, 310 F.3d at 849.[6] Tallant's allegations thus fail to establish any "rare and

exceptional" circumstances for equitable tolling of AEDPA's limitations period.

In addition, Tallant lack of diligence in pursuit of his claims precludes him from invoking

equitable tolling. A legitimate claim of "attorney abandonment can qualify as an extraordinary

circumstance for equitable tolling purposes, but does not, by itself, excuse the petitioner from his

---

[6] In addition, Tallant was not bereft of legal assistance during this time. Though he was
proceeding *pro se* during the filing of certain of his state post-conviction pleadings and his
federal *habeas corpus* petition, he had access to legal assistance, case law, and other legal
materials during his incarceration through the Inmate Legal Assistance Program. *See, e.g., Neal
v. Bradley*, No. 2:05CV67-M-B, 2006 WL 2796404, at *4 (N.D. Miss. Sept. 25, 2006).

duty of diligence." *Manning*, 688 F.3d at 189 n.2 (emphasis added). Due diligence in pursuit of a petitioner's remedies is a requirement independent of any attorney's efforts. *See, e.g., Palacios*, 723 F.3d at 605 (noting that a petitioner seeking to establish due diligence must exercise it even when he receives inadequate legal representation). And a "[petitioner] cannot claim diligence in reliance on attorneys for a period of time during which he had no reason to believe he was actively represented by counsel." *Tsolainos v. Cain*, 540 F. App'x 394, 400 (5th Cir. 2013). Tallant's allegations have not shown any valid "extraordinary circumstances," and, in any event, the record contradicts his allegations.

Even if Tallant could identify an extraordinary circumstance that prevented him from timely filing, the record reveals that he was not diligent in pursuing his claims. Tallant's trial counsel filed his first "PCR motion" some thirteen months after Tallant's guilty pleas and sentencing requesting copies of evidence from Tallant's case that the trial court previously sealed because it contained child pornography. Indeed, Tallant's own records submitted to this court confirm that, in a letter dated December 27, 2018, counsel informed him of the trial court's denial of his first PCR motion (filed on November 30, 2018). Tallant then waited until March 1, 2019, to begin filing records requests (which do not constitute valid attempts to pursue post-conviction relief) to the trial court.

Tallant acknowledged that he had already received copies of his indictment, sentencing order, and plea hearing transcript, however, throughout April and May 2019, he continued document requests with the Lee County Circuit Court. SCR, Cause No. 2020-CP-01077-COA, Vol. 2 at 91, 95. He then waited until November 20, 2019, to file a mandamus petition in the Mississippi Supreme Court on his first PCR motion. In that petition, he submitted documents he

- 16 -

had possessed for almost a year – documents in which trial counsel had notified him regarding the status of that first PCR motion.

After the Mississippi Supreme Court's February 2020 dismissal of his mandamus petition as moot, Tallant waited another six months to file his second PCR motion in the trial court—almost two years after his federal *habeas corpus* limitations period had expired. *See Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001) (holding that a four-month delay in filing petition after ruling in state court was not "expedient" to warrant equitable tolling); *see also Villegas v. Johnson*, 184 F.3d 467, 472 (5th Cir. 1999) (holding that an "expired limitations period cannot be revived by filing a state *habeas* petition"). Further, after the Mississippi Supreme Court denied certiorari review on his appeal on his second PCR motion, Tallant waited for over three months to file his federal petition for a writ of *habeas corpus*.

After the numerous delays described above, Tallant ultimately filed his federal petition for a writ of *habeas corpus* – more than four years beyond his AEDPA filing deadline. He was not reasonably diligent in seeking collateral review of his guilty pleas and sentences or in filing his federal petition. *See Palacios*, 723 F.3d at 604–08; *Clarke v. Rader*, 721 F.3d 339, 344 (5th Cir. 2013) (quoting *In re Wilson*, 442 F.3d at 875) (holding that "'delays of the petitioner's own making do not qualify' for equitable tolling.") For these reasons, Tallant's federal petition for a writ of *habeas corpus* remained due in this court by November 16, 2018.

## The Instant Petition for a Writ of *Habeas Corpus* Is Untimely

Under the prison "mailbox rule," the instant *pro se* federal petition for a writ of *habeas corpus* is deemed filed on the date the petitioner delivered it to prison officials for mailing to the district court. *Coleman v. Johnson,* 184 F.3d 398, 401, *reh'g and reh'g en banc denied,* 196 F.3d 1259 (5th Cir. 1999), *cert. denied,* 529 U.S. 1057, 120 S. Ct. 1564, 146 L.Ed.2d 467 (2000)

(citing *Spotville v. Cain,* 149 F.3d 374, 376-78 (5th Cir. 1998)). In this case, the federal petition was filed in December of 2022 –some four years after the November 16, 2018, filing deadline. The petition for a writ of *habeas corpus* will therefore be dismissed with prejudice as untimely filed.

## An Evidentiary Hearing Is Not Warranted

The decision regarding whether to hold a federal *habeas corpus* evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2), which states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
> (A) the claim relies on –
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). As shown in the discussion above, the record currently before the court is sufficient to support the court's conclusion that Tallant's federal petition for a writ of *habeas corpus* is untimely filed. His request for an evidentiary hearing is therefore denied.

## Conclusion

For these reasons, the State's motion to dismiss will be granted, and the instant petition for a writ of *habeas corpus* will dismissed with prejudice and without evidentiary hearing as untimely filed under 28 U.S.C. § 2244(d). A final judgment consistent with this memorandum opinion will issue today.

- 18 -

**SO ORDERED**, this, the 30th day of May, 2023.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI